# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **FEDERAL INSURANCE COMPANY, Subrogee of SIERRA EXPRESS INC.**, | ]<br>]<br>]<br>] |
| Plaintiff, | ]   Case No.: 4:22-cv-00083-ACA |
| v. | ]<br>] |
| **KELTON WRECKER d/b/a JIMMY CHARLES WRECKER, LLC,** | ]<br>]<br>]<br>] |
| Defendant. | ] |

## MEMORANDUM OPINION AND ORDER

A Sierra Express tractor-trailer loaded with 40,000 pounds of carpet ran off an Alabama highway. The Alabama State Troopers called Kelton Wrecker, a heavy recovery specialist company, to remove the tractor-trailer. Before Kelton Wrecker began the removal, Sierra's owner called Kelton Wrecker to ask if it had the necessary equipment to perform the recovery. Kelton Wrecker represented that it did and began the removal. During the removal, Kelton Wrecker damaged the carpet and Sierra's insurer, Federal Insurance Company, covered the loss of the carpets.

Federal Insurance, as subrogee of Sierra, brought this action against Kelton Wrecker for negligence and breach of an oral contract. (Doc. 7 ¶¶ 13–21). Kelton Wrecker has moved for summary judgment. (Doc. 25).

Because there are triable issues of fact as to both claims, the court **DENIES** the motion for summary judgment on Counts One and Two.

I.    BACKGROUND

In deciding a motion for summary judgment, the court "view[s] all evidence and draw[s] all reasonable inferences in the light most favorable to the non-moving party." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019). "The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts." *Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020). "[W]here there are varying accounts of what happened," the court must "adopt the account most favorable" to Federal Insurance. *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) (quotation marks omitted). "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Phillips v. Legacy Cabinets*, 87 F.4th 1313, 1320 (11th Cir. 2023) (quotation marks omitted).

A Sierra tractor-trailer hauling 40,000 pounds of carpet ran off an Alabama highway. (*See* doc. 26-1 at 8–10, 12, 39). The truck came to rest in the grass on the side of the highway. (*See id.* at 15). Thereafter, state troopers arrived at the scene. (*See* doc. 27-1 at 26–28).

In Alabama, if a vehicle needs to be recovered from the side of the road and the owner does not request a specific tow company, law enforcement calls a pre-approved towing company off its rotating wrecker list. (*See* doc. 33-13 at 2, 15). On the day of the accident, the troopers called Kelton Wrecker from the rotating wrecker list. (Doc. 27-1 at 26–28; *see also* doc. 26-1 at 18–19; doc. 33-2 at 23–24). Jimmy Kelton arrived at the scene, surveyed the accident, and before doing any work, spoke with Charles Burger, the owner of Sierra. (*See* doc. 26-1 at 19–20; *see also* doc. 33-2 at 32–33).

Mr. Burger was never present at the accident scene, nor were any Sierra employees other than the truck drivers involved in the accident. (Doc. 26-1 at 20–22; *see id.* at 14). Mr. Burger testified that he told Mr. Kelton the trailer looked like it was intact and asked if he had the right equipment to complete the recovery:

> [I]t looks to me like the truck and the trailer is intact. Do you have a big enough wrecker to where we can pull it straight back and get it on the road and then take it probably to your place? Do you have a pole hyster[1] that if we have to we can off load the carpet at a dock onto another trailer?

(*Id.* at 20). According to Mr. Burger, Mr. Kelton responded: "Oh yeah . . . No problem . . . I've got it handled." (*Id.*). Mr. Burger expected Kelton Wrecker to tow

---

[1] A pole hyster, which is the standard machine for moving a carpet, is a forklift with a twelve- to fifteen-foot-long pole at its end; to unload carpet safely from a trailer, the operator drives the pole hyster into the trailer from a dock, directs the pole inside the carpet roll, lifts the forklift, and backs the pole hyster out of the trailer onto the dock. (Doc. 26-1 at 56–57, 59–60). It cannot be used on rough or uneven terrain, like grass or the shoulder of a highway. (*Id.* at 59–60).

the trailer from the shoulder of the highway to a dock where a pole hyster could be used to transfer the carpet to a different trailer. (Doc. 26-1 at 58–59).

Using a 25-ton and 50-ton wrecker, Kelton Wrecker began to tow the tractor-trailer toward the highway; but as the trailer started moving, it began to fall apart. (Doc. 27-1 at 37–38, 42, 61). To lighten the weight in the trailer, they stopped pulling the trailer and unloaded about half of the carpet with a track hoe. (*Id.* at 43–44, 49, 52, 110). Kelton Wrecker called another tow company for assistance and used all the recovery units they had available. (Doc. 33-2 at 49).

The parties dispute several material facts. Sierra employees testified that they did not see any trailer damage in the pictures they looked at after the accident and before Kelton Wrecker began working. (*Id.* at 14, 80–81; doc. 34-1 at 16, 41–42; *see* doc. 26-1 at 20). They also testified that the carpet was unlikely to be damaged in the accident because it was packed tightly in the trailer. (*See* doc. 26-1 at 43–44). And Mr. Burger testified that there are "plenty" of towing companies that have the appropriate equipment to tow the trailer to the road. (*Id.* at 72).

Kelton Wrecker employees testified that the trailer was damaged in at least three places before they arrived. (*See* doc. 33-2 at 29–30, 36). Jamison Kelton, a Kelton Wrecker employee, testified that once they started pulling the trailer the damage caused the trailer to start falling apart and it could not be towed without removing the carpet at the scene. (*Id.* at 39, 45–47, 63). Jamison further testified that

4

no other truck could have pulled the trailer without removing the carpet and additional trucks would not have helped pull the trailer because it was falling apart as it was being pulled. (*Id.* at 48–49).

## II. DISCUSSION

The court must grant summary judgment if the movant establishes "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Hellums*, 945 F.3d at 1148. "[T]here is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Looney v. Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (quotation marks omitted).

Kelton Wrecker moves for summary judgment on the two claims asserted against it—negligence and breach of an oral contract. (Doc. 25 at 1; *see also* doc. 36 at 1 n.1).

### 1. Negligence

Count One alleges Kelton Wrecker acted negligently because it owed a duty to Sierra to remove all the carpets without damaging them, it breached that duty by damaging the carpets, and Sierra was harmed as a direct and proximate result of Kelton Wrecker's negligence. (Doc. 7 at ¶¶ 14–16). Kelton Wrecker argues it owed no duty to Sierra, and even if it did, it did not breach that duty because its conduct was reasonable. (*See* doc. 31 at 18–19).

5

Under Alabama law, to prevail on a negligence claim, a plaintiff must prove (1) the defendant owed the plaintiff a legal duty, (2) the defendant breached that duty, (3) the plaintiff suffered a loss or injury, and (4) the defendant's breach was an actual and proximate cause of that injury. *Haddan v. Norfolk S. Ry. Corp.*, 367 So. 3d 1067, 1072 (Ala. 2022). "A duty of care arises when it is foreseeable that harm may result if care is not exercised." *Hannah v. Gregg, Bland & Berry, Inc.*, 840 So. 2d 839, 857 (Ala. 2002).

Here, Federal Insurance presented evidence from which a reasonable jury could find Kelton Wrecker assumed a duty to act reasonably when it agreed to recover the trailer and that damage to the carpets was foreseeable. (*See* doc. 26-1 at 68–70). Federal Insurance also presented evidence that the trailer and cargo were not substantially damaged when Kelton Wrecker arrived (*id.* at 14; doc. 34-1 at 22), and that Kelton Wrecker did not exercise reasonable care by attempting to remove the carpets in the embankment or by using a track hoe, rather than a pole hyster, to remove the carpets (*see* doc. 26-1 at 58–59; 68–70). Although it is undisputed that a pole hyster could not have been used in the embankment or on the side of a road (doc. 26-1 at 59–60), a reasonable jury could find that Kelton Wrecker did not exercise reasonable care in moving the trailer to the shoulder of the highway because it did not call more, or different, towing vehicles to move the trailer (*see* doc. 26-1 at 60, 72; doc. 33-2 at 48).

Because Federal Insurance's evidence creates triable issues of fact on their negligence claim, the court **DENIES** Kelton Wrecker's motion for summary judgment on Count One.

2. Breach of Contract

Count Two alleges that Sierra entered an oral contract with Kelton Wrecker to remove all the carpets from the trailer without causing damage to the carpets and that Kelton Wrecker breached the contract by damaging the carpets. (Doc. 7 ¶¶ 18–20). Federal Insurance argues the oral contract was formed when Mr. Burger asked Mr. Kelton:

> [I]t looks to me like the truck and the trailer is intact. Do you have a big enough wrecker to where we can pull it straight back and get it on the road and then take it probably to your place? Do you have a pole hyster that if we have to we can off load the carpet at a dock onto another trailer?

(Doc. 35 at 8–11; *see* doc. 26-1 at 20; doc. 7 ¶¶ 18–20) (quotation marks omitted). To which Mr. Kelton responded: "Oh yeah . . . No problem . . . I've got it handled." (Doc. 26-1 at 20).

To form a contract under Alabama law, there must be (1) an offer and acceptance, (2) consideration, and (3) and mutual assent to terms essential to the formation of the contract. *Ex parte Cain*, 838 So. 2d 1020, 1026–27 (Ala. 2002). The trier of fact determines the terms of the oral contract. *Black Diamond Dev., Inc. v. Thompson*, 979 So. 2d 47, 52 (Ala. 2007).

7

Kelton Wrecker argues it is entitled to summary judgment because no contract was formed. (Doc. 31 at 17–18). Specifically, it argues there was no mutual assent to the contract's essential terms because "preservation of the carpet or the moving of the carpet at the scene, were not discussed." (*Id.*). But a reasonable jury could find the request for a pole hyster to unload the carpet established the preservation of the carpet as an essential term of the contract. Indeed, Mr. Kelton testified that it was always his intent and priority to try and save the cargo during a recovery, and Jamison Kelton testified that they worked as carefully as possibly to remove the carpets. (Docs. 27-1 at 37–38; doc. 33-2 at 50). And a reasonable jury could find there was adequate consideration because Federal Insurance presented evidence that Mr. Burger would have used a different recovery company if he knew Kelton Wrecker was going to use a track hoe to offload some of the carpet. (*See* doc. 26-1 at 26–27, 72).

Because Federal Insurance has presented triable issues of fact on the breach of an oral contract claim, the court **DENIES** Kelton Wrecker's motion for summary judgment on Count Two.

### III.   CONCLUSION

The court **DENIES** Kelton Wrecker's motion for summary judgment on Counts One and Two.

**DONE** and **ORDERED** this January 8, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE